**UNITED STATES of America,**
**Plaintiff,**

v.

**John W. SCOTT, Defendant.**

**Cr. No. 8906.**

United States District Court
D. North Dakota,
Northeastern Division.

July 11, 1961.
As Amended July 12, 1961.

David Rubin, U. S. Department of Justice, Washington, D. C., for plaintiff, United States of America.

Harold D. Shaft, of Shaft, Benson & Shaft, Grand Forks, N. D., for defendant, John W. Scott.

RONALD N. DAVIES, District Judge.

On November 15th, 1960, the United States Attorney for the District of North Dakota filed the following Information:

"I

"Prior to June 28, 1960, Quentin Burdick had publicly declared his intention to seek, and did seek, the office of United States Senator from the State of North Dakota, in the Special Senatorial Election held in the State of North Dakota on the 28th day of June, 1960.

"II

"During the month of June, 1960, in the District of North Dakota, John W. Scott wilfully published and distributed, and caused to be published and distributed copies of a certain pamphlet, writing and statement relating to and concerning the said Quentin Burdick. The said pamphlet, writing and statement was

entitled IS THIS SMEAR—OR ARE THEY FACTS, and did not contain the names of persons, associations, committees and corporations responsible for the publication and distribution of the same and the names of the officers of such associations, committees and corporations in violation of Section 612 of Title 18 U.S.C."

§ 612 reads:

"Whoever willfully publishes or distributes or causes to be published or distributed, or for the purpose of publishing or distributing the same, knowingly deposits for mailing or delivery or causes to be deposited for mailing or delivery, or, except in cases of employees of the Post Office Department in the official discharge of their duties, knowingly transports or causes to be transported in interstate commerce any card, pamphlet, circular, poster, dodger, advertisement, writing, or other statement relating to or concerning any person who has publicly declared his intention to seek the office of President, or Vice President of the United States, or Senator or Representative in, or Delegate or Resident Commissioner to Congress, in a primary, general, or special election, or convention of a political party, or has caused or permitted his intention to do so to be publicly declared, which does not contain the names of the persons, associations, committees, and corporations responsible for the publication or distribution of the same, and the names of the officers of each such association, committee, or corporation, shall be fined not more than $1,000 or imprisoned not more than one year, or both. June 25, 1948, c. 645, 62 Stat. 724, amended Aug. 25, 1950, c. 784, § 2, 64 Stat. 475."

On December 8th, 1960, the Defendant, John W. Scott, moved to dismiss the Information alleging:

442

"The indictment [1] does not state facts sufficient to constitute an offense against the United States in this, that Section 612 or Title 18 of the United States Code, violation of which is alleged in the Indictment, is in violation of the first amendment to the Constitution of the United States."

Defendant and the Government thereafter filed briefs in support of and in opposition to the Motion to Dismiss, and on February 7, 1961, the United States Attorney filed the following request:

"In view of the serious Constitutional question presented by the Defendant's motion herein, the fact that this case appears to be one of first impression, and the importance of the Constitutional issue presented herein, the undersigned, on behalf of the Civil Rights Division of the Department of Justice, does hereby request an opportunity for oral argument, and that sufficient time be allowed to permit an attorney from the Civil Rights Division of the Department of Justice to present the oral argument."

On March 7, 1961, the motion was argued orally by counsel, and time was granted for filing additional briefs and memoranda.

The Defendant challenges the Information filed against him *solely* upon the ground of the unconstitutionality of Title 18, U.S.C., § 612, as violative of the First Amendment to the Constitution of the United States. The Defendant does not question the sufficiency of the Information to charge the offense of violation of that specific Section. The Defendant stakes his position "almost exclusively" as he stated on oral argument on the holding in Talley v. State of California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559.

In support of his motion to dismiss the Defendant Scott filed an affidavit, the text of which follows:

"John W. Scott being first duly sworn on oath says:

"I am the defendant in the above entitled action and submit this affidavit in support of my motion to dismiss the Information:

"My principal occupation is that of farming. I reside upon a farm owned by me in Gilby Township, Grand Forks County, North Dakota, and am actively and personally engaged in the farming of approximately three thousand acres of land; in such farming operations I raise substantial quantities of Wheat, Durum, Potatoes and Sugar Beets.

"The occupation of farming in general, and my operations in particular, are subject to extensive regulation by the government of the United States and especially by the Secretary of Agriculture and many subordinate officers, agencies and instrumentalities of the Department of Agriculture, including among others the following:

"My wheat acreage allotment is fixed and determined by the Grain Division of the Agricultural Stabilization and Conservation Committee.

"My sugar beet acreage allotment is fixed and determined by the Sugar Division of the Agricultural Stabilization and Conservation Committee.

"My soil conservation allowances and payments are fixed and determined by the Agricultural Stabilization and Conservation Committee and the Soil Conservation Service.

"My Soil Bank Rental is fixed and determined by the Agricultural Stabilization and Conservation Committee.

"My potatoes are inspected and graded by Federal Inspectors of the

1. Defendant inadvertently used the word "Indictment." I treat the word as "Information" which was obviously intended.

Fruit and Vegetable Division of the Department of Agriculture.

"My shipments in Interstate Commerce are subject to inspection and condemnation by the Food and Drug Administration.

"Penalties for over-planting, whether innocent or intentional, may be imposed by the State and County Committees of the Agricultural Stabilization and Conservation Division.

"My farm labor is investigated by and I am subject to penalties imposed upon prosecution by the Child Labor Division of the Department of Labor.

"As an income earner and as the employer of employees, I am subject to the Income Tax Laws and Regulations, including the requirements of withholding from and paying for my employees Social Security taxes.

"In all, or nearly all, of these matters, there is necessity for frequent contacts, negotiations, agreements with and orders and instructions from Federal agents and representatives at various levels. In many of these matters the Federal representatives are vested with extensive discretionary powers."

In Talley, supra, the Supreme Court discussed the reasons for its decisions in Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480, and N. A. A. C. P. v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, stating, 362 U.S. 60, 65, 80 S.Ct. 536, 539: "The reason for those holdings was that identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." And continues: "This broad Los Angeles ordinance is subject to the same infirmity. We hold that it, like the Griffin,[2] Georgia, ordinance, is void on its face."

In enacting § 612, supra, the Congress among other things, made it a criminal offense to wilfully publish and distribute or cause to be published and distributed pamphlets concerning any person who was a candidate for the Senate without disclosing the names of the person or persons or groups responsible for its publication and distribution.

The Defendant conceded on oral argument that the principle is well established by prior court decisions that the courts will examine in each individual case the effect of challenged legislation.

■ Trial courts are well advised to weigh the circumstances and appraise the substantiality of the reasons advanced in support of the enactment of legislation when its constitutionality is under attack.

■ The Congress determined that in certain specified instances the writers of pamphlets must disclose their identity. And why was this done? So that the electorate would be informed and make its own appraisal of the reason or reasons why a particular candidate was being supported or opposed by an individual or groups. Is there anything sinister in requiring disclosure of identity to the end that voters may use their ballots intelligently? Is it not perfectly apparent what havoc could be wrought by anonymous publications concerning candidates enumerated under § 612?

The Defendant's theory of fear of reprisal is highly speculative and conjectural, and it may be added, any citizen of the country could urge the same argument in like circumstances and compel the courts to attempt to forecast the danger of reprisal. The mere possibility of reprisal is not enough.

There may always be men who might think in terms of reprisal, but there will always be courts to protect the intimidated from the intimidators.

In a very recent case the Supreme Court of the United States in Communist Party of the United States of America v. Subversive Activities Control Board,

2. Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949.

**444**

1961), 367 U.S. 1, 81 S.Ct. 1357, 1407, 6 L.Ed.2d 625, said:

> " * * * To state that individual liberties may be affected is to establish the condition for, not to arrive at the conclusion of, constitutional decision. Against the impediments which particular governmental regulation causes to entire freedom of individual action, there must be weighed the value to the public of the ends which the regulation may achieve. (Emphasis supplied). Schenck v. United States, 249 U.S. 47 [39 S.Ct. 247, 63 L.Ed. 470]; Dennis v. United States, 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137]; American Communications Ass'n v. Douds, 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925]."

The decision of this Court on the motion before it is based squarely upon the rationale of this most recent pronouncement of the Supreme Court of the United States.

The value to the public of the statute here under attack far outweighs the supposed infringement of the rights of the Defendant here.

Members of the Senate and the House of Representatives comprise the greatest deliberative bodies in the nation. Legislation such as this that regulates practices incident to their candidacies and elections has a salutary effect upon the country as a whole. Surreptitious publications by unknown authors are an evil which the Congress has seen fit to proscribe within the ambit of § 612. It is a valid exercise of the legislative power in the national interest.

The Information states facts sufficient to constitute an offense against the United States and § 612 of Title 18, U.S.C., is not violative of the First Amendment to the Constitution of the United States.

The motion of the Defendant to dismiss the Information must be, and is hereby denied.